## WILLIAM PECK *v*. THE STATE.

1. CONTINUANCE. — The allegation that the continuance is not sought for delay is indispensable in an application, whether it be for a first or a subsequent continuance.

2. SAME — CASE STATED. — The application for a third continuance shows that the defendant, eight days before being placed upon trial, caused a subpœna for a witness to be issued and placed in the hands of an officer, and had at the previous term of the court caused an attachment for another witness to be issued and placed in the hands of an officer, neither of which processes, by no default of the defendant, had been returned by the officer, etc. *Held*, that, this being the third application, due diligence is not shown.

3. PRACTICE. — The court properly refused an instruction asked by the defendant, when there was no testimony before the jury to which it could apply.

4. HOMICIDE — JUSTIFICATION. — Evidence of a difficulty between the parties several hours before the killing will not, of itself, afford justification for the homicide.

5. SAME — THREATS. — A defendant on trial for murder, seeking to justify himself on the ground of previous threats against his own life, may introduce evidence of threats made; but such shall not be regarded as a justification, unless it be shown that, at the time of the homicide, the person killed, by some act then done, manifested an intention to execute the threats so made.

APPEAL from the Criminal District Court of Harris. Tried below before the Hon. J. MASTERSON, judge of the Twenty-first Judicial District.

The facts are substantially stated in the opinion of the court.

No brief for the appellant has reached the reporters.

*Thomas Ball*, Assistant Attorney-General, for the State.

Ector, P. J.   The appellant was indicted at the October term, 1877, of the Criminal District Court of Harris County, for the murder of Alfred Burney.   The cause was twice continued on the application of appellant, and at the October term, 1878, of said court it was tried.   The appellant was convicted of murder in the second degree, and his punishment assessed at thirty years in the penitentiary.

The first question we propose to consider arises upon the action of the court in overruling appellant's application for a continuance.   The appellant moved the court to grant him a continuance "on account of the absence of John Fulton, a resident of Harris County, whose testimony is material to his defence, and for whom the defendant, by his attorney, ordered a subpœna to issue on or about October 15, 1878; that said subpœna, on above said day, was issued and placed in the hands of the sheriff of Harris County, but, by no default of the defendant or his counsel, has not been returned; which will appear by the affidavit of one of his attorneys, of record, filed herewith, marked defendant's 'exhibit A,' and prayed to be read as a part of this application; that he can prove by said witness Fulton that, shortly prior to the killing of Burnett by this defendant, he, the said Burnett, went to said witness and told him that he had had an altercation with the defendant, and that, had he not been prevented, he would have killed this defendant, but that he now had his own pistol (showing the witness the pistol), and that he (Burnett) intended to kill the defendant as soon as he saw him.   And defendant says, further, that he cannot safely go to trial on account of the absence of Charles Irwin, a material witness to his defence, a resident of Harris County, and for whose appearance the defendant, by his

counsel, at the last term of said court, ordered an attachment to issue, directed to the sheriff of Harris County, which said attachment was, as this defendant is informed, duly issued and placed in the hands of said sheriff; that said sheriff has made no return thereof to this court; that he expects to prove by said Irwin that in the morning of the day on which the killing of Burnett by this defendant took place, and but a few hours prior to the killing, the said Burnett attempted to shoot the defendant with a gun belonging to said Irwin. Defendant further says that said witnesses are not absent by his procurement or consent, and that he has a reasonable expectation of procuring their attendance at the next term of said court; that the above testimony cannot be procured from any other source.''

"Exhibit A,'' which is referred to in defendant's application for continuance, is the affidavit of his attorney, of record, who states therein that, on or about October 15, 1878, he, as the attorney of the defendant, directed a subpœna to issue to the sheriff of Harris County, commanding him to summon one John Fulton to testify in behalf of said defendant.

The court did not err in overruling appellant's application for continuance. It was fatally defective because it nowhere states that the same is not made for delay, which is required in the first and in every subsequent application for continuance. And, this being the third application, no sufficient diligence, we think, is shown on the part of appellant, nor excuse for not being more diligent.

The defence relied on in this case is that, at the time appellant killed Burney, he (appellant) was acting under a well-grounded belief that his life was in immediate and imminent danger from Burney. Emily Bates, a woman who was living with appellant as his wife, testified that appellant and Burney had had a difficulty at the house of appellant on the morning of the day that deceased was

shot; that deceased went off and got a gun, which was taken from him; that deceased then came by appellant's house, told appellant that he was going after his pistol, and that he intended to kill appellant before night.

The evidence on the part of the State shows substantially that the appellant, with four other persons, left Bender's mill to go to Spring Station for a lot of corn. They were in a truck, pulled by two mules, on a tramway. About half a mile from Spring Station they met Albert Burney and Henry McFarland, who stepped off the track to let the truck pass, and stood on the side of the road facing the track, making no hostile demonstrations. Burney greeted the men on the truck; he had nothing in his hands, and had his hands hanging down by his side. Just as the truck was passing him, appellant put out his hand and shot the deceased with a pistol, who died from the effects of the shot.

The appellant asked the court to give the following instruction, to wit: "You are charged, gentlemen, that if you believe, from the circumstances surrounding the case, that William Peck, the defendant, acting under a well-grounded apprehension that his life was then and there in imminent danger, when shooting the deceased, or that he was then and there in danger of great bodily injury being done him by deceased, and that he then and there shot deceased to save his own life, you must acquit the defendant. You are to judge said circumstances by all the incidents surrounding, coupled with the actions of the deceased at the time."

The court properly refused to give the charge asked by the appellant, because there was nothing in the evidence to justify it. The statement of facts shows that no act was done by Burney, at the time he was shot, which manifested an intention on his part to take the life of appellant or inflict any serious bodily injury upon him. The previous difficulty

between these parties, several hours before the shooting, was no excuse or justification for the homicide.

On the subject of threats, the court, in its charge to the jury, instructed them that "threats made against the life of a defendant, when the evidence shows an act by the deceased then done from which the defendant might reasonably infer an immediate intention to carry the threats into execution, would justify homicide in the defence and protection of himself; but mere threats, unaccompanied by any such demonstrations, would not justify homicide."

Our Criminal Code provides that, "where a defendant accused of murder seeks to justify himself on the ground of threats made against his own life, he may be permitted to introduce evidence of threats made; but the same shall not be regarded as affording a justification for the offence, unless it be shown that, at the time of the homicide, the person killed, by some act then done, manifested an intention to execute the threats so made." Pasc. Dig., art. 2270.

The court charged all the law applicable to the case. The evidence is sufficient to sustain the judgment. We find no error in the record that would warrant a reversal of the judgment.

Believing that appellant has had a fair and impartial trial, and been properly convicted, the judgment is affirmed.

*Affirmed.*